IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Deborah Lee | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| *-vs-* | ) | No. 09 CV 7789 |
| | ) | |
| Thomas J. Dart, Sheriff of Cook | ) | *(Judge Leinenweber)* |
| County, and Cook County, | ) | |
| Illinois | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S SUPPLEMENT TO MEMORANDUM IN OPPOSITION TO MOTION TO QUASH DEPOSITION OF DEFENDANT DART

On June 17, 2010, the Court entered and continued the motion to quash while defendant prepared amended interrogatory answers. The amendments, attached as Exhibit 2, show the need to depose defendant Dart.

### I.   Background

Plaintiff, while a pre-trial detainee at the Cook County Jail, delivered a child on June 2, 2009.  (Complaint, par. 15.) Plaintiff was shackled when she was transported to the hospital (Complaint, par. 11), and remained shackled to her hospital bed during labor and delivery. (Complaint, pars. 13-15.)

Plaintiff contends in this lawsuit that her shackling was unlawful under state and federal law, and seeks damages from defendant

Thomas J. Dart in his individual capacity, as well as in his official capacity as Sheriff of Cook County.

Plaintiff seeks to depose Dart; now before the Court is Dart's request for a protective order to bar the deposition.

## II.   The Amendments to the Interrogatory Answers Show the Need to Depose Defendant Dart

There are three reasons why the interrogatory answers show the need to depose defendant Dart:

First, the answers are not signed by defendant Dart. The original interrogatory answers (Exhibit 1) were not verified; the amendments (Exhibit 2) are verified by an attorney for Dart. This is a basic violation of the commands of Rule 33 of the Federal Rules of Civil Procedure:

> Under Rule 33, answers to interrogatories must be verified and must be signed by the person answering the interrogatory, not only by the party's attorney. *Hindmon v. Natl.-Ben Franklin Life Ins. Corp.,* 677 F.2d 617, 619 (7th Cir. 1982) (observing that interrogatory answers signed by attorney and not party violated "the clear mandate of Federal Rule of Civil Procedure 33(a)"); *accord Overton v. City of Harvey,* 29 F.Supp.2d 894, 901 (N.D.Ill. 1998) (striking as summary judgment exhibit plaintiff's unverified answers to interrogatories signed only by attorney); *McDougall v. Dunn,* 468 F.2d 468, 472-73, 476 (4th Cir. 1972) (finding error in sustaining interrogatory responses signed under oath only by counsel); *Fonville v. Dist. of Columbia,* 230 F.R.D. 38, 45 (D.D.C. 2005) (finding paralegal's signing of interrogatory answers "utterly improper" since interrogatories must be answered by party to whom they were served).

*Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D.Ill. 2010)

Second, the answers fail to show that Dart was not personally involvement in the continuation of the shackling policy in June of 2009.

To establish Dart's personal liability for her shackling on June 2, 2009, plaintiff must establish Dart's personal involvement in the practice. In interrogatory 2, plaintiffs asked whether Dart had personal knowledge of the shackling practice; defendant answered with a boilerplate objection and the assertion that "Defendant Dart had knowledge of the existence of policies." In interrogatory 4, plaintiff asked for the date when Dart "first became aware of the written policies, procedures, and/or practices relating to guarding or providing security for detainees." Defendant responded in the original and unverified interrogatory answers that "Dart became aware of the existence of such policies on or about July 2009." (Exhibit 1 at 2.) This answer is neither clarified nor explained in the verified (by counsel) amendments. (Exhibit 2.)

The amended answer to interrogatory 6 (Exhibit 2 at 1-2) indicates that Dart learned of the shackling practices from several jail superintendents. The amended answer, however, does not state when this information was communicated to Dart; nor does the amended

-3-

answer describe the nature of the information about the shackling practice that was conveyed to Dart.

Another basic question relevant to personal liability is what action, if any, Dart took after he became aware of the shackling practice. The response to interrogatory 10, which seeks this information, is a boilerplate objection and a non-responsive reference to documents.

Third, the amended interrogatory answers are supported by a "verification" that is so carefully qualified as to render the answers meaningless. The verification consists of the sworn declaration of the Sheriff's General Counsel that he does "not have personal and first-hand knowledge of every fact herein and thus have relied upon the sources identified therein." (Exhibit 2 at 4.)

Defense counsel asserts that the interrogatory answers show that "Defendant Dart had no personal knowledge of the creation or day-to-day implementation of the policies in question." (Def.Mem. 2.) This assertion is meaningless because defendant Dart failed to verify the interrogatory answers. As in *Egonmwan v. Cook County Sheriff's Department,* No. 06 CV 4794 (April 29, 2008) (attached as Exhibit 3), this is a sufficient reason to allow Dart to be deposed. *See Clinton v. Jones,* 520 U.S. 681, 703-05 (1997); *Northwestern Univ. v. City of*

*Evanston,* 2001 WL 743756 (N.D.Ill. June 29, 2001) (permitting deposition of mayor and city manager).

It is therefore respectfully submitted that the motion to quash be denied.

/s/ <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
ARDC 0830399
200 S. Michigan, Ste 1240
Chicago, IL. 60604-2430
(312) 427-3200

Thomas G. Morrissey, Ltd.
ARDC 3125372
10249 S. Western Ave.
Chicago, IL. 60643
(773) 233-7900

*Attorneys for Plaintiff*

**Exhibit 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Deborah Lee, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 7789 |
| | ) | |
| v. | ) | Judge Henry D. Leinenweber |
| | ) | |
| Thomas J. Dart, Sheriff of Cook County, and | ) | |
| Cook County, Illinois | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT'S ANSWER TO PLAINTIFF'S INTERROGATORIES

1.     Identify all written policies, procedures, and training manuals relating to guarding or providing security for detainees while they are patients at a hospital, including but not limited to the practice or policy of restraining and/or shackling detainees to hospital beds.

ANSWER: Defendants direct Plaintiffs to previously tendered documents titled External Operations, Policy No. EO-32 and External Operations, Policy No. 32.

2.     State whether Defendant Dart had personal knowledge of the written policies, procedures, and/or practices relating to guarding or providing security for detainees while they are patients at a hospital, including but not limited to the practice or policy of restraining and/or shackling detainees to hospital beds during the period from December 1, 2004 through December of 2009.

ANSWER: Defendants object to Interrogatory 2 as it relates to the December 1, 2004 date, because it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and not waiving this objection, Defendants answer that Defendant Dart had

1

knowledge of the existence of policies, but did not participate in the creation or day to day execution of such policies.

3. Unless Defendant Dart's answer to the proceeding interrogatory is an unqualified "no", state the following:

4. When did Defendant Dart first become aware of the written policies, procedures, and/or practices relating to guarding or providing security for detainees while they are patients at a hospital.

ANSWER: Defendant Dart became aware of the existence of such policies on or about July 2009. Investigation continues.

5. Describe Defendant Dart's understanding of policies and/or practice of the Sheriff's Office related to guarding or providing security for detainees, including but not limited to pregnant women, assigned to a hospital when he first became aware of the policies and/or practices.

ANSWER: Defendant Dart had knowledge of the existence of policies, but did not participate in the creation or day to day execution of such policies.

Investigation continues.

6. Describe how Defendant Dart first became aware of said practices and/or policies for guarding hospitalized pregnant females and if the source of this information was an employee or agent of the Sheriff's Office, please identify the person(s) position within the Sheriff's Office and who was present during this conversation.

2

ANSWER: Defendant Dart had knowledge of the existence of policies, but did not participate in the creation or day to day execution of such policies. Superintendent Gary Hickerson, Michael Holmes III, Jocelyn Jackson, and Thomas Snooks. Investigation continues.

7.    Describe any and all steps taken by Defendant Dart after he became aware of the Sheriff's Office policies, procedures, and/or practices relating to guarding or providing security for pregnant detainees while they are patients at a hospital.

ANSWER: Defendants object to providing information that is irrelevant to any claims or defenses and/or that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Defendants direct Plaintiffs to previously tendered documents titled External Operations, Policy No. EO-32 and External Operations, Policy No. 32.

8.    Identify any and all persons, including employees of the defendants, with knowledge pertaining to the defendants practice or policies of restraining and/or shackling detainees to hospital beds.

ANSWER: Superintendent Gary Hickerson, Michael Holmes III, Jocelyn Jackson, and Thomas Snooks. Investigation continues.

9.    During the period from December 1, 2004 to the present, has there ever been a practice or policy of restraining and/or shackling certain detainees to hospital beds.

ANSWER: Defendants object to Interrogatory 9 as it relates to the December 1, 2004 date, because it is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and not waiving this objection, Defendants answer yes. Defendants direct Plaintiffs to

3

previously tendered documents titled External Operations, Policy No. EO-32 and External Operations, Policy No. 32. Defendants further instruct Plaintiffs to look to Stroger's policies and procedures regarding pregnant inmates.

10.  Unless your answer to the proceeding interrogatory is an unqualified "no", state the following:

11.  The period of time when the defendants' practice or policy of restraining and/or shackling detainees to hospital beds was in effect.

ANSWER: Defendants direct Plaintiff to previously tendered documents titled External Operations, Policy No. EO-32 and External Operations, Policy No. 32. Defendants further instruct Plaintiffs to look to Stroger's policies and procedures regarding pregnant inmates.

12.  Whether the defendants' practice or policy of restraining and/or shackling detainees to hospital beds applied to all hospitalized detainees.

ANSWER: Defendants direct Plaintiff to previously tendered documents titled External Operations, Policy No. EO-32 and External Operations, Policy No. 32. Defendants further instruct Plaintiffs to look to Stroger's policies and procedures regarding pregnant inmates.

13.  If the defendants' practice or policy of restraining and/or shackling detainees to hospital beds only applied only to certain hospitalized detainees, identify what criteria or factors were used by the defendants in selecting which hospitalized detainees were shackled to their hospital beds.

ANSWER: Defendants direct Plaintiff to previously tendered documents titled External

4

Operations, Policy No. EO-32 and External Operations, Policy No. 32. Defendants further instruct Plaintiffs to look to Stroger's policies and procedures regarding pregnant inmates.

14.     Identify the names of all employees assigned to guard and/or provide security when plaintiff Deborah Lee was hospitalized in John Stroger Hospital in June 2, 2009.

ANSWER: Defendants direct to previously tendered documents titled External Operations Daily Detainee Hospitalization Checklists.

15.     Identify any and all reasons why it was necessary to shackle the plaintiff's leg to a hospital bed prior to her giving birth on June 2, 2009.

ANSWER: Defendants direct Plaintiff to previously tendered documents titled External Operations, Policy No. EO-32 and External Operations, Policy No. 32. Defendants further instruct Plaintiffs to look to Stroger's policies and procedures regarding pregnant inmates.

16.     Identify any and all reasons why it was necessary to shackle the plaintiff's leg to a hospital bed after she gave birth to her child on June 2, 2009.

ANSWER: Defendants direct Plaintiff to previously tendered documents titled External Operations, Policy No. EO-32 and External Operations, Policy No. 32. Defendants further instruct Plaintiffs to look to Stroger's policies and procedures regarding pregnant inmates.

5

17.    Identify any and all individuals with knowledge relating or pertaining to the plaintiff presenting a flight risk or security risk during her hospitalization or transportation to the hospital in June of 2009.

ANSWER: Defendants direct Plaintiffs to previously tendered documents titled External Operations, Policy No. EO-32 and External Operations, Policy No. 32. Defendants further instruct Plaintiffs to look to Stroger's policies and procedures regarding pregnant inmates.

18.    In June of 2009, describe the policy and/or the practice followed by the Sheriff's Office in selecting female inmates to include in the Sheriff's "Mom" program.

ANSWER: Defendants refer to previously tendered document titled MOM's Program Participant Handbook.

19.    Explain why plaintiff Lee was not admitted into the Sheriff's "Moms" program until after she gave birth in June of 2009.

ANSWER: Defendants direct Plaintiff to previously tendered "Moms" Program Participant Handbook.

6

Respectfully Submitted,
ANITA ALVAREZ
State's Attorney of Cook County

By: /s/Patrick Smith
Patrick Smith
Assistant State's Attorney
Deputy Supervisor Torts/Civil Rights Litigation
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-2388

7

**Exhibit 2**

| Deborah Lee, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 7789 |
| | ) | |
| v. | ) | Judge Henry D. Leinenweber |
| | ) | |
| Thomas J. Dart, Sheriff of Cook County, and | ) | |
| Cook County, Illinois | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' AMENDMENTS TO DEFENDANTS'
## ANSWERS TO PLAINTIFF'S INTERROGATORIES

5. Describe Defendant Dart's understanding of policies and/or practice of the
Sheriff's Office related to guarding or providing security for detainees, including but not limited
to pregnant women, assigned to a hospital when he first became aware of the policies and/or
practices.

ANSWER: Defendant Dart had knowledge of the existence of policies, but did not
participate in the creation or day to day execution of such policies. Defendants direct Plaintiffs
to previously tendered documents titled External Operations, Policy No. EO-32 and External
Operations, Policy No. 32. Investigation continues.

6. Describe how Defendant Dart first became aware of said practices and/or policies
for guarding hospitalized pregnant females and if the source of this information was an employee
or agent of the Sheriff's Office, please identify the person(s) position within the Sheriff's Office
and who was present during this conversation.

ANSWER: Defendant Dart had knowledge of the existence of policies, but did not participate in the creation or day to day execution of such policies. Defendant Dart became aware of the alleged practices through his Superintendents Gary Hickerson, Michael Holmes III, Jocelyn Jackson, and Thomas Snooks. Investigation continues.

7.     Describe any and all steps taken by Defendant Dart after he became aware of the Sheriff's Office policies, procedures, and/or practices relating to guarding or providing security for pregnant detainees while they are patients at a hospital.

ANSWER: Defendants object to providing information that is irrelevant to any claims or defenses and/or that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Defendants direct Plaintiffs to previously tendered documents titled External Operations, Policy No. EO-32 and External Operations, Policy No. 32.

15.     Identify any and all reasons why it was necessary to shackle the plaintiff 's leg to a hospital bed prior to her giving birth on June 2, 2009.

ANSWER: Defendants direct Plaintiff to previously tendered documents titled External Operations, Policy No. EO-32 and External Operations, Policy No. 32. Defendants further instruct Plaintiffs to look to Stroger's policies and procedures regarding pregnant inmates.

17.     Identify any and all individuals with knowledge relating or pertaining to the plaintiff presenting a flight risk or security risk during her hospitalization or transportation to the hospital in June of 2009.

ANSWER: Defendants direct Plaintiffs to previously tendered documents titled External Operations, Policy No. EO-32 and External Operations, Policy No. 32. Defendants further instruct Plaintiffs to look to Stroger's policies and procedures regarding pregnant inmates. Defendants further direct Plaintiffs to previously tendered documents titled External Operations Daily Detainee Checklists.

19.    Explain why plaintiff Lee was not admitted into the Sheriff's "Moms" program until after she gave birth in June of 2009.

ANSWER: Defendants direct Plaintiff to previously tendered "Moms" Program Participant Handbook. Defendants further direct Plaintiffs to previously tendered document titled Plaintiff's MIT Pack.

## VERIFICATION

The undersigned declares that I am an attorney with the Office of Sheriff of Cook County, and I am duly authorized to verify the Thomas Dart's Answers to Interrogatories, and under penalty of perjury, declare that these answers have been compiled from various sources with assistance of counsel, that I do not have personal and first-hand knowledge of every fact herein, and thus have relied upon the sources identified therein. I do, however, on the basis of that information, certify that I believe the answers herein to be true and correct

By:

General Counsel,
Office of the Sheriff of Cook County

**Exhibit 3**

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 06 C 4764 | **DATE** | 4/29/2008 |
| **CASE TITLE** | Egonmwan vs. Cook County Sheriff's Dept et al. | | |

**DOCKET ENTRY TEXT**

Plaintiff's motion to compel the deposition of defendant Michael Sheahan [110] is granted.

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

Before the Court is plaintiff's motion to compel the deposition of defendant Michael Sheahan.  After reviewing plaintiff's motion, defendants' response and the reply, this Court finds that plaintiff has established the need for the former sheriff's deposition.  Current and former high ranking government officials are subject to discovery despite their reluctance to participate.  *See e.g., Fairley v. Andrews,* 423 F. Supp.2d, 800, 810-811 (N.D. Ill. 2006).  Furthermore, this Court finds that the deposition is likely to lead to the discovery of admissible evidence.  We disagree with defendants' suggestion that plaintiff seeks this deposition for the purpose of annoyance or embarrassment.  Accordingly, plaintiff's motion to compel is granted and defendants' request for a protective order is denied.  To the extent that this Order impacts the ten deposition limit imposed by Rule 30(a)(2), both parties are granted leave to take more than ten depositions.

| | |
|---|---|
| Courtroom Deputy Initials: | KF |

Plaintiff's Exhibit 3

# CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of June, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  Patrick S. Smith, ASA, 500 Daley Center, Chicago, IL 60602, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:  none.


/s/ Kenneth N. Flaxman
_____
Kenneth N. Flaxman
ARDC Number 08830399
200 S Michigan Ave, Ste 1240
Chicago, IL 60604-2430
(312) 427-3200 (phone)
(312) 427-3930 (fax)
knf@kenlaw.com (email)